UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PRESCOTT ARNOLD,

    Plaintiff,

v.                              CASE NO.  8:06-cv-1709-T-23MAP

NOVARTIS PHARMACEUTICALS
CORPORATION,

    Defendant.

_____/

## **ORDER**

Novartis moves (Doc. 35) to exclude testimony by Arnold's designated non-retained experts – Drs. Craig Broome, Ronald Copenhaver, Gary Gordon, Daniel McSherry, John Peterson, and Glen Jones – each a treating physician of Mrs. Arnold – on "whether Aredia® and/or Zometa® caused Mrs. Arnold to develop osteonecrosis of the jaw ('ONJ')." Arnold opposes (Doc. 51) NPC's motion. This order addresses only the discrete question of the admissibility (at least, over a Rule 702 objection) of testimony by the treating physicians on the causation question. In other words, this order neither permits nor prohibits the non-retained experts' – the treating physicians' – testimony "as to the facts of [Mrs. Arnold's] symptoms, tests, diagnosis and treatment; as to what they did in response to [Mrs. Arnold's] condition; and as to what they would have done differently, if anything, had they

known of any additional warnings" – testimony that is generally admissible subject to Rules 401 through 403 and other witness-specific objections.

Among other more particular arguments, NPC argues that none of the non-retained experts possesses or even claims to possess the expertise requisite to offering on the cause of Mrs. Arnold's ONJ a Rule 702 opinion compliant with the governing standards of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Arnold responds that each is well-qualified in his respective medical field and able to state a diagnosis of Mrs. Arnold's disease, including the cause of the disease.

A careful reading of the motions and memoranda confirms that only one, Dr. Jones, of the six treating physicians presents even a fairly debatable issue. For the reasons (among others) stated by the defendants, each of the other treating physicians is ineligible (based, at least, on this record) to testify in this action on the cause of Mrs. Arnold's ONJ. In the correct case, each of the treating physicians might qualify to offer opinion testimony in the physician's respective specialty (or more generally in the correct case) about whether another physician's diagnosis or treatment comports with the applicable standard of care. However, this action presents no question of negligence in failing to diagnose, in incorrectly diagnosing, in prescribing the incorrect treatment, or in administering the prescribed treatment – that is, presents no question of the applicable standard of care.

The instant case assumes that the physicians acted in accord with the applicable standard of care and undertakes, instead, to reliably explore in accord with

accepted and reliable scientific principles whether the administration of a particular pharmaceutical actually caused an injury to the plaintiff.

Review of the parties' papers and close scrutiny of the deposition of Dr. Jones confirms that Dr. Jones explicitly disavows expertise on ONJ, including the "mechanisms by which . . . IV bisphosphonate therapy [is] thought to cause [ONJ]," although he presently rates himself – in terms of treatment of a patient – "similar to those experts, like Dr. Marx." In Mrs. Arnold's case, Dr. Jones's assessment of causation was exclusively for the purpose of diagnosis and treatment. To treat Mrs. Arnold, Dr. Jones employed a "position paper" from the American Association of Oral and Maxillofacial Surgeons that proscribed a course of treatment if a patient met three criteria, which Mrs. Arnold met. Dr. Jones has attended seminars and followed "Dr. Marx's protocols" while treating about twenty-five patients with ONJ. But Dr. Jones conducted no "pathological investigation," and Dr. Jones has conducted no other disciplined and independent primary research and experimentation on the scientific explanation for the cause of ONJ, although he has studied, attended classes, and treated patients (although the sample of patients is too small for most scientific research).

Although he seems an admirably qualified oral and maxillofacial surgeon, Dr. Jones's knowledge is attributable to his inquiries with others, who are, more nearly, the Rule 702 experts on the cause of ONJ. Reliable scientific principles, methods, and data necessary to formulate, test, and confirm a hypothesis of causation for ONJ

are more likely in the possession of the authors whose works he read and the speakers whose lectures he attended.  The witness whose principles, methods, and data permit the formulation and confirmation of a reliable and scientific hypothesis of causation is precisely the witness whose hypothesis of causation undergoes the test of Rule 702 and *Daubert* to determine:

> (1) whether the expert's technique or theory can be or has been tested—that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community.

Dr. Jones is not that witness; Dr. Jones offers no scientific hypothesis susceptible to falsification or confirmation by the application to his work of the test of Rule 702 and *Daubert*.

The defendant's motion is **GRANTED** as to Drs. Craig Broome, Ronald Copenhaver, Gary Gordon, Daniel McSherry, John Peterson, and Glen Jones.

ORDERED in Tampa, Florida, on June 27, 2014.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE