UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PRESCOTT ARNOLD,

    Plaintiff,

v.                                                  CASE NO. 8:06-cv-1709-T-23MAP

NOVARTIS PHARMACEUTICALS
CORPORATION,

    Defendant.
_____/

## **ORDER**

Novartis moves (Doc. 37) *in limine* under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to exclude from evidence opinion testimony by James W. Vogel, M.D., about "(I) Novartis's corporate conduct; (II) pre-bisphosphonate-treatment dental screening; (III) ONJ incidence; (IV) an alternative bisphosphonate dosing-duration regimen that has not been approved by the FDA; and (V) the comparative safety of Aredia and Zometa." (Doc. 37 at 7)

Arnold opposes (Doc. 42) the motion and argues that "the MDL court already **denied** [Novartis's] pre-remand *Daubert* Motion as to Dr. Vogel on the issues of general causation and the scientific and medical accuracy of the warnings given by Novartis" (Doc. 42 at 1) (emphasis in original), which, Arnold asserts (without citation – for an obvious reason), governs as "law of the case." Arnold further asserts that Judge Bucklew and Judge Presnell – both in the Middle District of Florida –

have permitted testimony from Dr. Vogel and advises that "[t]his court should adopt the rulings of Judges Bucklew and Presnell." Finally, although seeming to disfavor the option of a judge's independent determination of an issue, Arnold points to a memorandum in Judge Bucklew's action, *Dopson-Troutt*, 8:06-cv-1708, that putatively addresses the merits of Novartis's present *Daubert* motion and on which Arnold "relies." But a review of the *Dopson-Troutt* memorandum reveals another account of the MDL court's cursory ruling and of other motions and rulings in other cases but reveals little or nothing about the merits of Novartis's *Daubert* motion.

The MDL court's brief order provides a statement of the general principles applicable in a *Daubert* determination, including that the proposed opinion testimony is the "product of reliable principles and methods" and that "the witness has applied the principles and methods reliably." The MDL court notes the trial judge's burden to ensure reliability by "a preliminary assessment of whether the reasoning or methodology . . . is scientifically valid and . . . applied properly to the facts in issue." The MDL court states that Vogel's testimony is "clearly more than unsupported speculation" (a standard distinctly less than *Daubert* prescribes), after which the MDL court determines – without cogent explanation – that "the plaintiffs have carried their burden" and that Dr. Vogel's testimony is admissible on "general causation and the accuracy of the warnings."

The MDL court's order resolves none of the other issues raised by Novartis and evaluates neither the principles and methods (the order identifies no principle

and no method) of Dr. Vogel nor the reliability of the application of Dr. Vogel's principles and methods to the present controversy.  Inquiry through Pacer into the filings in the MDL action (06-MD-1760) reveals that Novartis's motion and memorandum (Docs. 2359 and 2367, respectively) and Novartis's reply (Doc. 2698) appear on the public docket but Arnold's response is sealed.  In response to an order (Doc. 101), Arnold filed (Doc. 103) on the public docket in this action the response filed under seal in the MDL court (less some of the exhibits, which apparently are competitively or otherwise sensitive).

**I.  Corporate Conduct**

Within the category of "corporate conduct," Novartis asks to exclude Vogel's testimony that Novartis:

> (1) misrepresented causation evidence; (2) referenced corticosteroids as potential risk factors for ONJ in the warnings on its label to misdirect "the focus of medical attention away from the jaw area"; (3) minimized the incidence rate of ONJ; (4) knew and failed to communicate that ONJ occurs in a patient after fewer infusions of Zometa than of Aredia; and (5) knew and failed to communicate that a decrease in the duration, dose, and/or frequency of therapy decreases the incidence of ONJ.

 (Doc. 37 at 7)  Except to refer to other judges' rulings and papers in other cases and invite a judicial search, Arnold's response (Doc. 42) omits to respond directly on the merits to these requests.

A detailed review of the papers in the MDL court, Vogel's report and testimony, and other pertinent matters – and a further consideration of the MDL court's order permitting Vogel to testify about "the accuracy of the warnings"

- 3 -

conveyed in Novartis's labeling – commends a determination that Vogel may opine, assuming the establishment of a proper predicate, about the accuracy of representations of fact or the effect on accuracy of an omitted fact but may not opine about or characterize Novartis's motive, intent, or state of mind, including in connection with any misstatement or omission and including a fact in any of the five categories specified in the preceding paragraph.

## II. Dental Screening

Novartis objects to Vogel's opinion about whether dental screening reduces the incidence of ONJ because Mrs. Arnold received dental screening before her bisphosphonate treatment and, therefore, the opinion does not "fit the case," would tend to confuse the jury, and would consume time unproductively.  Also, Novartis objects to the reliability of the testimony, which is based, Novartis contends, on a single article from 2008 and which fails the threshold requirements of *Daubert*. Again, Arnold's response (Doc. 42) invites the district judge to visit other cases in search of a response "if the Court prefers to now consider the issues."  A search of the pertinent MDL paper, Doc. 2528, which mostly discusses causation, reveals only two pertinent sentences: "The recent position paper from AAOMS agrees with Dr. Vogel on the benefits of dental screening.  Nothing more need be said."  Not so.

On the question of dental screening, Vogel's testimony is excluded pending the establishment of a proper factual predicate establishing probative value sufficient to satisfy Rules 401 through 403.  But, even assuming the necessary predicate, the

opinion expressed in paragraph 61 of Vogel's report that "a pattern of good oral hygiene, restriction on invasive dental procedures, and early recognition . . . has changed therapeutic management" and that "[t]his type of clinical program should have been introduced by Novartis" seems unjustified, at least as a basis for liability in this action, based only on the results reported by LaVerde, et al., from Milan in 2003 through 2008. Besides, this testimony is cumulative of the (better founded) testimony of Marx, again implicating Rules 401 through 403.

### III.     The Incidence of ONJ

Novartis requests exclusion of Vogel's opinions disclosed in paragraphs 47 and 48 of Vogel's report to the effect that Novartis "minimized" in public papers, including a "wall poster" distributed in 2007, the incidence of ONJ. Novartis claims that this opinion improperly characterizes corporate conduct, fails to "fit the case" because Mrs. Arnold's treatment occurred before the instances on which Vogel relies, assumes facts that are historically incorrect, "cherry picks" studies on which to formulate a generalized observation, and employs a methodology characterized by "internal inconsistency."

Corporate conduct, motive, intent, and state of mind is a subject on which Vogel's characterization and opinion is inadmissible, but an account of the state of knowledge at the time of a particular statement is admissible (assuming a proper predicate of the witness's knowledge) over a *Daubert* objection, even if, depending on the content of a question and an answer, another objection might prevail.

Categorical exclusion of the challenged testimony is not warranted based on "failure to fit," although depending on the content of a question and a prospective answer and the inference the offering party intends the jury to draw, a trial objection (such as the lack of a proper predicate of knowledge) might warrant sustaining. The remaining, specific objections by Novartis to Vogel's opinions about the incidence of ONJ are more a basis for cross-examination than a basis for disqualification or exclusion.

### IV. Alternative Dosing and Labeling

Novartis requests exclusion of Vogel's opinions (1) that a reduced dose of bisphosphonate for a shorter time remains equally efficacious medically but presents a reduced risk of ONJ and (2) that Novartis wrongfully failed to timely disseminate the improved dosing information by labeling and otherwise.

Again, Arnold's memorandum in this action scarcely speaks to this subject. The memorandum in *Dopson-Troutt*, on which Arnold "relies," also says little. Arnold's principal response in the MDL court says only this under the heading "alternative dosing" (Doc. 2528 at 24, 06-MD-1760):

> Once again, Novartis cannot deny there is at least one peer-reviewed published study that supports Dr. Vogel's opinion that reduced dosing frequency can achieve the benefits of bisphosphonate therapy with less risk of BONJ. Novartis may have quibbles with this publication, but that is not a proper basis for excluding Dr. Vogel's testimony.

Although he may testify (as determined elsewhere) about "the accuracy of the warnings," Vogel appears to lack a reliable, scientific, and qualified opinion on a

- 6 -

regime of "alternative dosing" and the required or permissible labeling and warning. Hence, his opinions in that regard are inadmissible.

### V. Comparing Zometa and Aredia

Finally, Novartis objects to Vogel's prospective testimony that "Zometa has a higher risk of ONJ than Aredia and thus Aredia should be prescribed to individuals with metastatic breast cancer . . . ." (Doc. 37 at 17) Novartis asserts that Vogel's testimony contradicts Vogel's practice, which includes prescribing Zometa. This objection by Novartis is more properly a subject of cross-examination than a subject for a *Daubert* objection.

### Conclusion

In accord with (but not subject to) the MDL court's order, Vogel may testify in the form of an opinion, admissible over an objection based on *Daubert*, to "general causation and the accuracy of the warnings" and otherwise in accord with this order.

ORDERED in Tampa, Florida, on June 27, 2014.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE