UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PRESCOTT ARNOLD,

    Plaintiff,

v.                                    CASE NO. 8:06-cv-1709-T-23MAP

NOVARTIS PHARMACEUTICALS
CORPORATION,

    Defendant.
_____/

**ORDER**

Novartis moves (Doc. 38) to exclude from evidence under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Rule 702, Federal Rules of Evidence, "discrete aspects" of the proposed testimony of Robert Marx, D.D.S., a "board certified" oral and maxillofacial surgeon from the University of Miami:

    (1)    undisclosed and unreliable dosing or duration opinions;

    (2)    opinions as to NPC's state of mind or "bad faith";

    (3)    claims that dental treatment measures prevent ONJ; and

    (4)    speculation as to bone physiology, chemistry, and the half-life of Zometa

(Doc. 38 at 1-2)

As the parties remark at too great length, several courts have ruled on the admissibility of Marx's testimony (as then configured) over a *Daubert* objection. The

MDL court ruled in a brief and unhelpful order that "Dr. Marx's testimony is clearly more than unsupported speculation" and admissible "for the purposes of summary judgment." The MDL court expressly disavows having considered the admissibility of Marx's opinions about "the alleged bad faith misconduct of Novartis" and "his opinions concerning the clinical trials." Without a useful explanation for admitting or excluding testimony, the MDL court's order lacks persuasive force. Arnold's argument that the MDL court's order is "law of the case" entirely misconceives the principle of "law of the case." Arnold also invokes the ruling of my colleague Judge Presnell in *Guenther v. Novartis*, 6:08-cv-456-Orl-31DAB (adopted more or less entirely by Judge Bucklew in *Dopson-Troutt v. Novartis*, 8:06-cv-1708-T-24EAJ). Judge Presnell adopts the MDL court's ruling on Marx and assesses a "new argument" by Novartis about "dental pre-screenings and avoidance of invasive dental procedures." Novartis's *Daubert* objections in this action are due consideration with cognizance of, but not subject to, these earlier orders.

### I. Dosing and Duration

Novartis argues that Marx's dosing and duration opinion is not disclosed in accord with applicable rules and orders; that Marx is not qualified to opine on dosing because he is not an oncologist because he does not prescribe Zometa in his practice and because he defers in his practice to an oncologist on dosing; and that Marx's opinion is unsupported by reliable scientific method and amounts to "personal musings" and mere "*ipse dixit*."

After an expression of solicitous concern for "colossal waste of judicial and legal resources," Arnold responds that paragraphs 42, 48, 51, 53, and 54 of Marx's report and paragraph 41 of his rebuttal report disclose the challenged opinions and that examination during Marx's depositions and testimony have included dosing and duration.

On balance, Marx appears to have no generally accepted, scientifically principled, reliable, and qualified basis on which to opine about the precise dosing and precise duration that maximizes the benefit to a patient and minimizes the risk to a patient, and a review of his reports reveals no discernible disclosure of either.  A more general and direct relation between increase in risk and increase in dose and between increase in risk and increase in duration appears both fairly disclosed in the reports and supported adequately by Marx's and others' inquiry and observation.  Marx appears neither to disclose nor to qualify to opine on the "acceptable risk/benefit" evaluation associated with any precise or specific dose of bisphosphonate.

**II. Intent, Motive, and State of Mind**

Novartis moves to exclude Marx's opinions about corporate intent, motive, and state of mind.  Arnold disavows the intent to elicit from Marx an opinion on Novartis's "intent, motive, or 'bad faith.'"  Arnold claims an intent to offer only "factual testimony about Dr. Marx's personal dealings with [Novartis]."  Of course, testimony about Marx's history, that is, about events observed first-hand rather than

about opinions, conclusions, and characterizations, is admissible without preliminary qualification under Rule 702, if relevant and if not otherwise objectionable on grounds apart from *Daubert*, a determination easily managed at trial.

### III.   Dental Evaluation and Treatment

Novartis moves to exclude Marx's opinions about the benefits of dental screening and the avoidance of invasive dentistry before bisphosphonate treatment. Novartis argues that the records show that Mrs. Arnold underwent dental screening and received only "necessary" dental care, including an invasive procedure, during her bisphosphonate treatment. Novartis states that, in Mrs. Arnold's case, Marx's views about the benefits of timely dental examination and treatment "would not assist the jury." Further, Novartis challenges Marx's opinions about dental treatment as unscientific, unreliable, and merely subjective speculation.

Arnold responds by invoking again the terse *Daubert* order entered by the MDL court and by invoking – in melodramatic upper case and bolded print – the rulings of three of my Middle District colleagues (as if a circuit court of appeals has ever affirmed an order, although wrong, because other district judges' orders were equally wrong).  The closest Arnold comes to a substantive response is to say that "NPC's arguments go to weight and reliability – the first to be judged by the trier of the fact, and the second, already decided, was for the judge of the law." Arnold adds that more recently Novartis has recommended dental screening to patients before treatment with Zometa and Aredia.

A reading of Marx's reports and other pertinent material supports that Marx can opine reliably and admissibly that dental screening and the avoidance of invasive dentistry benefit a bisphosphonate patient, but the record reveals no reliable scientific basis to conclude to a reasonable degree of medical and scientific certainty that dental screening and the avoidance of invasive dentistry prevent ONJ.

In *Jenkins v. Novartis*, 2012 WL 6213494 (E.D. Tenn.), the magistrate judge included among the pending issues "Dr. Marx's opinion that pretreatment dental screenings and 'drug holidays' are useful in preventing ONJ." The order, which uses the qualified term "useful in preventing" rather than the unqualified term "preventing," appears to approve as admissible Marx's testimony that dental screening and the avoidance of invasive dentistry can reduce the severity or incidence of ONJ. On the other hand, *Jenkins* appears not to admit Marx's opinion (if any) on the prospect of complete prevention (if so, the order reaches further than the science).

In other words, *Jenkins* stumbles on a "perplexing part of the *Daubert* challenge," specifically, "that Dr. Marx and [Novartis] appear to hold the same opinion regarding pretreatment." Perhaps the magistrate judge confuses "prevent" with "reduce." To prevent is to stop completely; to prevent only in some cases is to reduce. The former is not established by reliable science; the latter is sufficiently established to warrant opinion testimony by Marx, if otherwise unobjectionable.

In all events, because Mrs. Arnold received dental screening and underwent an invasive procedure, the admission of Marx's testimony about screening and invasive

dentistry appears, as Novartis says, not "to fit the case" and appears likely to confuse or mislead the jury. This testimony awaits the establishment at trial of a proper predicate.

### IV.    The Half-Life of Zometa and Aredia

Novartis moves to exclude Marx's testimony about the chemical half-life of Zometa and Aredia. Although challenging Marx's qualifications to opine on the half-life of a chemical in human bone, Novartis asserts that Marx's opinion is not reliable science but is derived by Marx from a single source that describes the half-life of alendronate, another bisphosphonate. Novartis rejects Marx's opinion as unqualified and scientifically unreliable. In response, Arnold says that the medical community agrees that the half-life of Zometa and Aredia is measurable in years but remains unspecified.

Again, Marx's derived opinion may not exceed the state of the science, including the precision of the science, in stating a fundamental chemical attribute, such as half-life. However, without claiming unwarranted precision, Marx may testify to the prevailing scientific understanding of the general range of the half-life of a bisphosphonate.

## Conclusion

In general, in accord with the MDL court's order and Judge Presnell's order (but, again, not by force of one or both of those orders), Marx may opine as disclosed in his reports about a causal connection between ONJ and Zometa or Aredia; the treatment of an ONJ that Marx attributes to bisphosphonate; and the benefit of dental screenings and the avoidance of intrusive dentistry, to the extent relevance is established by a proper factual predicate. Marx may otherwise testify in accord with this order.

Novartis's motion (Doc. 38) is **GRANTED IN PART** and **DENIED IN PART**.

ORDERED in Tampa, Florida, on June 27, 2014.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE