# IN THE UNITED STATES DISTRICT COURT FOR
# THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| **PRESCOTT ARNOLD,** | ) |
| Plaintiff, | ) |
| | ) **Case No. 8:06-cv-1709-T-23MAP** |
| v. | ) |
| **NOVARTIS PHARMACEUTICALS CORPORATION,** | ) **ORAL ARGUMENT REQUESTED** |
| Defendant | ) |

## NOVARTIS PHARMACEUTICALS CORPORATION'S REFILED *DAUBERT* MOTION TO EXCLUDE PLAINTIFF'S EXPERT DR. SUZANNE PARISIAN WITH SUPPORTING MEMORANDUM OF LAW

Novartis Pharmaceuticals Corporation hereby refiles its motion, pursuant to the Court's June 27, 2014 Order (Dkt. No. 111), to exclude the testimony of plaintiff's expert Dr. Suzanne Parisian under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Given that this Court has precluded punitive damages, none of Dr. Parisian's opinions are relevant. But, if she is permitted to testify, certain opinions still fail *Daubert* scrutiny.

Dr. Parisian's proposed testimony is only relevant in a case where punitive damages have not already been excluded. It is not appropriate or helpful in the determination of the only issue in this case: whether Novartis adequately warned Mrs. Arnold's prescribing physicians. *See* Order on Omnibus Mot. #1 at 3, 7 (Dkt. No. 117). This Court has previously excluded Dr. Parisian's opinions on similar grounds in the liability phase of a pharmaceutical case where the plaintiffs asserted negligence and strict liability claims based primarily on a

failure to warn, and it should do so again here.  *See Cross v. Wyeth Pharm., Inc.*, No. 8:06-cv-429-T-23AEP, 2011 WL 3498305, at *5 (M.D. Fla. Aug. 10, 2011).

If Dr. Parisian's testimony is not excluded entirely, then Novartis specifically seeks to exclude the following:

- ➢ Her testimony on the alleged customs and practices of drug testing in the pharmaceutical industry and Novartis's supposed breach of the standard of care through some failure to act "reasonably."  *See infra* § II.

- ➢ Her testimony on the alleged inadequacy of Novartis's pharmacovigilance efforts (*i.e.*, what Novartis should have done after first learning about ONJ reports).  *See infra* § III.A.

- ➢ The allegation that Novartis's warnings are inadequate, derived from her view that the drugs cause ONJ under her theory of "regulatory causation," *see infra* § III.B, based upon the following independently excludible opinions:

  - That adverse events allegedly "similar to" ONJ were seen in a 1981 study on rice rats taking a drug other than Aredia®/Zometa®;

  - That alleged undiagnosed cases of ONJ occurred in the Aredia® and Zometa® clinical trials;

  - That Novartis's clinical trials were allegedly inadequately designed; and

  - That osteopetrosis, a genetic bone disease, should have put Novartis on notice about ONJ.

- ➢ Her characterization of Novartis corporate documents, claiming they show "bad" conduct in violation of certain FDA regulations.  *See infra* § III.C.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), Novartis's counsel conferred with plaintiff's counsel in a good faith effort to resolve the issues raised herein, but counsel did not reach agreement.

## I. ADMISSIBILITY STANDARDS UNDER *DAUBERT* AND RULE 702.

In *Daubert*, the Supreme Court addressed the admissibility of expert testimony and established "the exacting standards of reliability such evidence must meet." *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000). When deciding whether to admit or exclude expert testimony, "[t]he district court's role is especially significant since the expert's opinion 'can be both powerful and quite misleading because of the difficulty in evaluating it.'" *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *Daubert*, 509 U.S. at 595). Courts in this Circuit, therefore, "must conduct a rigorous three-part inquiry" when evaluating the admissibility of expert testimony under Rule 702. *Cook ex. rel. Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1107 (11th Cir. 2005) (quotations omitted).

Plaintiff has the burden of proving that Dr. Parisian's proposed testimony is admissible under Federal Rule of Evidence 702, *Daubert*, and its progeny. *See*, *e.g.*, *id.* at 1107, 1113. To do so, plaintiff first must establish that Dr. Parisian has the necessary expertise, in the form of "knowledge, skill, experience, training, or education" to render an opinion on the specific issue addressed by her proposed testimony. Fed. R. Evid. 702. Second, plaintiff must establish that Dr. Parisian's testimony is "reliable," meaning that it is "ground[ed] in the methods and procedures of science," as opposed to her "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 589-90. Third, plaintiff must establish that her testimony "will help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702, which means it must have "a valid scientific connection" to (*i.e.*, must "fit") the pertinent inquiry in this case, *Daubert*, 509 U.S. at 591-92. When these tests are applied to Dr. Parisian, her testimony fails their rigors.

**II. DR. PARISIAN'S TESTIMONY IS ONLY RELEVANT IN A CASE WHERE PUNITIVE DAMAGES HAVE NOT BEEN EXCLUDED.**

The Court has already determined that whether Novartis breached a standard of care, or engaged in bad conduct, is irrelevant to this failure-to-warn case. *See* Order on Omnibus Mot. #1 at 3 (sustaining Novartis's objection to evidence on a duty to recommend a dental examination because this case "involves failure to warn of a danger and not breach of the standard of care."), 7 ("If the warnings were adequate, the plaintiff's case fails despite the subjective intent and character of the manufacturer; if the warnings were inadequate, the plaintiff's case succeeds despite the subjective intent and character of the manufacturer. Causation exists or not regardless of intent and character. Damages resulted or not regardless of intent and character.") (Dkt. No. 117). And in a similar case where punitive damages were not at issue, this Court excluded nearly identical opinions by Dr. Parisian on industry standards and "research that a 'reasonable' pharmaceutical company would have performed." *Cross*, 2011 WL 3498305, at *5.

*Cross* was a pharmaceutical product liability case divided into a liability phase and, if the plaintiff was successful in that phase, a punitive damages phase. In the liability phase, this Court found that Dr. Parisian's testimony about the "custom and practice of drug testing in the pharmaceutical industry" (or what a reasonable pharmaceutical company should have done) was irrelevant to "the adequacy of the warning, i.e., the defectiveness or fitness of the product" and excluded her testimony from that phase. *Id.* Here, although admitting she is unable to say whether Novartis violated any law, Novartis expects based on her prior testimony that Dr. Parisian will attempt to do just that despite no finding of any regulatory violation by FDA. *See, e.g.*, Trial Tr. at 1639-40, *Davids v. Novartis Pharm. Corp.*, No. CV-

06-0431 (ADS) (E.D.N.Y. Oct. 18, 2012) (opining that Novartis violated FDA regulations, 21 C.F.R. § 314, by not giving "relevant safety information") (Ex. 1).

Dr. Parisian's opinions about whether Novartis acted "reasonably" or followed industry standards are inadmissible because (a) they are irrelevant to the adequacy of the warning, thus lacking the necessary "fit" to the issues in this case, (b) they are vague and do not assist the trier of fact, and (c) they are offered by an expert who—having never worked at a pharmaceutical company or the FDA center that regulates drugs—lacks expertise to present such opinions. As was the case in *Cross*, Dr. Parisian's opinions concerning Novartis's conduct do not substantially address the principal liability question that the jury will face, *i.e.*, the adequacy of the warning as it relates to Mrs. Arnold's prescribing physicians. Her opinions are "irrelevant to the adequacy of the warning" and should, therefore, be excluded from this trial. *Cross*, 2011 WL 3498305, at *5.

### III. OTHER BASES FOR EXCLUDING DR. PARISIAN'S TESTIMONY, IF ANY IS RELEVANT.

#### A. Dr. Parisian Lacks The Requisite Experience To Criticize Novartis's Warnings Or Pharmacovigilance Efforts.

Dr. Parisian is a pathologist by training who practiced medicine for only four years and has not treated a living patient for more than 20 years. *See Daubert* Hr'g Tr. at 224, *Deutsch v. Novartis Pharm. Corp.*, No. 97-CV-4677 (E.D.N.Y. May 2, 2011) ("May 2, 2011 *Daubert* Hr'g") (Ex. 2). She has never worked for a pharmaceutical company. *See Hogan v. Novartis Pharm. Corp.*, No. 06 Civ. 0260 (BMC) (RER), 2011 WL 1533467, at *3 (E.D.N.Y. Apr. 24, 2011). Her FDA experience consists of a four-year stint in the early 1990s when she worked in the FDA center that regulates medical devices, not the one that

regulates prescription drugs such as Aredia® and Zometa®. *See* Dep. Tr. at 131-32, *In re Aredia & Zometa Prods. Liab. Litig.*, No. 3:06-MD-1760 (M.D. Tenn. Apr. 16, 2009) ("Apr. 16, 2009 Parisian Dep.") (Ex. 3). During her time at FDA, she never interpreted the regulations that she contends Novartis violated. *Id*. at 162. Dr. Parisian has never published on ONJ or bisphosphonates in any regard. Trial Tr. at 77-78, *Kyle v. Novartis Pharm. Corp.*, No. 1:06-CV-35-R (W.D. Ky. Jan. 13, 2012) ("*Kyle* Trial Testimony") (Ex. 4); Trial Tr. at 924; *Stevens v. Novartis Pharm. Corp.*, No. DV-08-100 (Mont. 4th Jud. Dist. Ct. Oct. 15, 2009) ("*Stevens* Trial Testimony") (Ex. 5).

Based on this background, Dr. Parisian is unqualified to criticize Novartis's warnings or its pharmacovigilance efforts. She is not an oncologist, has never prescribed Aredia® or Zometa®, and is not in the target audience for the warnings. *See* Apr. 16, 2009 Parisian Dep. at 55, 59, 71. She has no basis to understand how an oncologist, treating a patient with a terminal condition, would perceive the warnings. Nor does her limited FDA experience qualify her to determine whether Novartis violated any FDA regulations, as she never interpreted the regulations that she contends Novartis violated or even been part of labeling negotiations between FDA and a drug company. *See id.* at 162; Dep. Tr. at 480, *In re Bextra & Celebrex Prods. Liab. Litig.*, No. M:05-CV-01699-CRB (N.D. Cal. Mar. 18, 2008) (Ex. 6); Apr. 11, 2011 *Daubert* Hr'g at 303; Tr. of *Daubert* Hr'g at 84-85, *Talley v. Novartis Pharm. Corp.*, No. 3:08-cv-361 (W.D.N.C. June 20, 2011) ("June 20, 2011 *Daubert* Hr'g") (Ex. 7).

**B.     Dr. Parisian Lacks The Qualifications Needed To Testify About Causation, Her Opinions Do Not Derive From A Reliable Methodology, And The Opinions Are Not Helpful To The Jury.**

Dr. Parisian attempts to present evidence that bisphosphonate drugs cause ONJ,

opining that Novartis did not do what a reasonable pharmaceutical company would have done to investigate and warn of this alleged association. *See* Trial Tr. at 68, *Brown v. Novartis Pharm. Corp.*, No. 7:08-CV-130-FL (E.D.N.C. Sept. 14, 2012) ("*Brown* Trial Tr.") (Ex. 8). Dr. Parisian seeks to legitimize her causation opinion by calling it "regulatory causation," *id.*, and she will testify that this concept is based on the "causal association" standard of 21 C.F.R. § 201.57(c)(6)(i). Any testimony she would offer on causation, regulatory or otherwise, is inadmissible. *See Dopson-Troutt v. Novartis Pharm. Corp.*, No. 8:06-CV-1708-T-24EAJ, 2013 WL 1344755, at *3 (M.D. Fla. Mar. 28, 2013) ("Plaintiffs' counsel offers nothing to meaningfully distinguish 'causal association' from medical causation").

First, Dr. Parisian is not qualified to give causation testimony. She admits that she is not an expert on whether Aredia® or Zometa® can cause ONJ; is not an expert in dentistry, bone science or bisphosphonates; and does not diagnose or treat ONJ. *See, e.g.*, June 20, 2011 *Daubert* Hr'g at 113 ("Q. Do you agree, Doctor, that you're not in the Aredia® and Zometa® cases as a causation expert? A. Yes.") ; May 2, 2011 *Daubert* Hr'g at 349.

Second, Dr. Parisian's causation opinions are not grounded in proper methodology and are irrelevant to the claims at issue. The thrust of her testimony is that scientific evidence of a causal association between Aredia®, Zometa®, and ONJ existed prior to 2003 and should have been included in Novartis's pre-2003 prescribing information. For example, she will discuss six possible cases of ONJ in the Aredia® and Zometa® clinical trials to opine that "causation is clear." *See Brown* Trial Tr. at 68. She offers this causation opinion despite conceding that the independent investigators reported that the adverse events in the Aredia®

and Zometa® clinical trials were *unrelated* to bisphosphonate treatment.  *See* Trial Tr. at 808, *Bessemer v. Novartis Pharm. Corp.*, No. MID-L-1835-08 (N.J. Super. Ct. Law Div. Sept. 29, 2010) (Ex. 9).  Thus, Dr. Parisian draws a causal inference even where the oncologists most familiar with these clinical trial patients were unable to make the connection.  *See, e.g.*, Dep. Tr. at 800, *In re Aredia & Zometa Prods. Liab. Litig.*, No. 3:06-MD-1760 (M.D. Tenn. Apr. 17, 2009) ("Apr. 17, 2009 Parisian Dep.") ("[T]he description here in terms of the clinical studies, she [the trial participant] actually sounds like she has ONJ.") (Ex. 10).

Dr. Parisian also relies on a 1981 rat study of a different drug, clodronate, that she claims demonstrates causation.  *See* Trial Tr. at 42-43, *Fussman v. Novartis Pharm. Corp.*, No. 1:06CV149 (M.D.N.C. Nov. 3, 2010) (testifying that the study showed "a model similar to what we're discussing here today in terms of osteonecrosis of the jaw") (Ex. 11).  Dr. Parisian admits, however, that she is not an expert on animal studies or how they can be applied.  *See* June 20, 2011 *Daubert* Hr'g at 84 (Dr. Parisian has never done a study with rice rats); Apr. 17, 2009 Parisian Dep. at 499 (no animal model currently exists for ONJ).  Dr. Parisian's reference to the rat study is especially inappropriate given that plaintiff's primary medical causation expert, Dr. Marx, has testified that there is no reliable animal model to test for ONJ from bisphosphonates.  *See, e.g.*, Trial Test. of Dr. Robert Marx at 252, *Winter v. Novartis Pharm. Corp.*, No. 06-4049-CV-C-MJW (W.D. Mo. Mar. 21, 2012) (Ex. 12).

Additionally, Dr. Parisian will testify about osteopetrosis, a genetic disease she claims caused jaw problems similar to those seen in bisphosphonate patients, in her attempt to show that Novartis should have considered at an earlier time that Aredia® and Zometa® could cause ONJ.  *See* Trial Tr. at 54-55, *Chiles v. Novartis Pharm. Corp.*, No. 3:06-cv-96-J-25JBT

(M.D. Fla. Feb. 13, 2013) (Ex. 13).  In doing so, she relies upon articles (a) that did not discuss Aredia® and Zometa® in any fashion, and (b) that a Novartis employee found *after* Novartis began its extensive investigation following receipt of ONJ reports in patients receiving these medications.  *See* May 2, 2011 *Daubert* Hr'g Tr. at 279.  Dr. Parisian admits that no one in the medical, scientific, or regulatory communities ever suggested a connection to ONJ until after the first reports of ONJ in bisphosphonate patients.  *See* June 20, 2011 *Daubert* Hr'g at 75.  Apart from Dr. Parisian lacking the scientific expertise to testify about this genetic disease and bisphosphonates, her opinions reflect impermissible hindsight bias. *See, e.g.*, *KRS Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 421 (2007) ("A factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon *ex post* reasoning.").

Finally, Dr. Parisian did not disclose her "regulatory causation" opinion in her expert report.  *See Brown* Trial Tr. at 68; Dep. Tr. at 94, *In re Aredia & Zometa Prods. Liab. Litig.*, No. 278 MT (N.J. Super. Ct. Law Div. Feb. 3, 2010) (testifying she has not formed any additional opinions since she submitted her expert report) (Ex. 14).  The "causal association" language of 21 C.F.R. § 201.57(c)(6)(i) was inserted into the regulation in June 2006 (and post-dates Dr. Parisian's time at FDA, the supposed basis of her regulatory expertise, by more than a decade).  Therefore, any argument that relies on the "causal association" language of § 201.57(c)(6)(i) is unreliable because it could not possibly have been applied to Novartis's conduct when Mrs. Arnold received bisphosphonates from December 2001 through September 2004.

### C. Dr. Parisian's Summaries Of Corporate Documents Are Not Admissible Expert Testimony.

Dr. Parisian's primary role at trial is to quote from and characterize company documents, which, if they are admissible at all, need no expert interpretation to be understood. For example, in the most recent Aredia®/Zometa® trial, Dr. Parisian read in information directly from the label so the jury "can hear what the actual language is." Trial Tr. at 130-32, *Earp v. Novartis Pharm. Corp.*, No. 5:11-cv-680-D (E.D.N.C. May 8, 2014) (Ex. 15). Using an expert to recite from documents that laypersons can read and understand on their own is contrary to Fed. R. Evid. 702, which requires experts to apply scientific, technical, or other specialized knowledge that could assist the trier of fact beyond the testimony of other lay individuals. *See, e.g.*, *Miller v. Stryker Instruments*, No. CV 09-813-PHX-SRB, 2012 WL 1718825, at *11 (D. Ariz. Mar. 29, 2012) (Dr. Parisian's opinions about whether a manufacturer marketed its pain pumps for certain indications did not require specialized knowledge, and "much of Dr. Parisian's report [on this issue just] regurgitates facts that should be submitted directly to the jury."); *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1347-51 (S.D. Fla. 2010) ("Dr. Parisian's major role in this litigation appears to be that of Plaintiffs' advocate rather than expert. Her expertise is not required to present the factual narrative to the jury, and she has no expertise that allows her to infer [defendant's] and the FDA's knowledge and intent and present those inferences to the jury."). Thus, if the Court does permit Dr. Parisian to testify in some limited capacity, it should still preclude her from testifying in a way that merely paraphrases, summarizes, reads from, or characterizes company documents.

**IV. CONCLUSION**

For the foregoing reasons, the Court should exclude Dr. Parisian's proffered testimony.

Dated: July 11, 2014                                    Respectfully Submitted,

s/ Donald W. Fowler
Donald W. Fowler (lead trial counsel; admitted *pro hac vice*)
(dfowler@hollingsworthllp.com)
Gregory S. Chernack (admitted *pro hac vice*)
(gchernack@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, NW
Washington, D.C. 20005
(202) 898-5800
(202) 682-1639 (fax)

Michael J. Thomas (Florida Bar No. 897760)
(mike@penningtonlaw.com)
PENNINGTON P.A.
215 South Monroe St., 2nd Floor
Tallahassee, FL 32301
(850) 222-3533
(850) 222-2126 (fax)

*Attorneys for Defendant
Novartis Pharmaceuticals Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of July 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

              s/ Donald W. Fowler
              Donald W. Fowler
              *Admitted Pro Hac Vice*
              HOLLINGSWORTH LLP
              1350 I Street, N.W.
              Washington, DC  20005
              (202) 898-5800
              (202) 682-1639 (fax)
              dfowler@hollingsworthllp.com

              *Attorneys for Defendant*
              *Novartis Pharmaceuticals Corporation*